**WEST TENNESSEE POWER & LIGHT COMPANY, Petitioner, v. J. D. HUGHES, Defendant.**

Western Section. February 5, 1932.

Petition for Certiorari denied by Supreme Court, June 4, 1933.

W. G. Timberlake and L. L. Fonville, both of Jackson, for appellant.
N. R. Barham and T. W. Pope, both of Jackson, for appellee.

SENTER, J.   For convenience the parties will be referred to as in the court below, West Tennessee Power & Light Company, plaintiff, and J. D. Hughes, defendant.

This is a condemnation suit filed by petitioner to acquire a power transmission line right of way over and across the lands of the defendant.   The only question made on this appeal is to the amount awarded by the jury and trial judge as damages for the property taken and the incidental damages to the remainder of the tract of land not taken.

The right of way easement established by the judgment of the court is in conformity to the right of way set out in the application

for same made in the petition, and the report of the jury of view that set apart by metes and bounds the strip of land condemned. The jury of view awarded damages for property actually taken for the easement the sum of $600, and incidental damages to the remainder of the tract of land, $1,000, making a total of $1600. On appeal to the Circuit Court from the award of the jury of view, the jury fixed the amount of compensation for the right of way easement at $500, and incidental damages to the remainder of the tract at $900, thereby reducing the jury of view award from $1600 to $1400, and the court taxed the cost to J. D. Hughes. A motion for a new trial was made by petitioner, setting forth several grounds, and this motion was overruled and disallowed by the trial judge and judgment rendered in favor of the defendant landowner and against the petitioner for the amount of the jury verdict, $1400. From the action of the trial judge in overruling its motion for a new trial and rendering judgment against it for the amount of the jury verdict, the petitioner prayed and was granted an appeal in the nature of a writ of error to this court, and the appeal has been duly perfected and errors assigned.

The first assignment contends that there is no material evidence to sustain the verdict of the jury awarding $1400 damages. By the second assignment it is said that the verdict of the jury is contrary to the law and the evidence. By the third assignment it is insisted that the verdict of the jury is excessive as to damages found and awarded, both, as to the value of the land taken in the right of way, $500, and as to incidental damages of $900 to the balance of the tract, and that said verdict evinces passion, prejudice and caprice upon the part of the jury, and is so excessive as to shock the conscience of the court. The fourth assignment is very similar to the third, and under the fourth assignment it is contended that the award of $500 and $900 respectively, is contrary to the preponderance of the evidence.

The fifth assignment charges error of the court in refusing to permit plaintiff upon its cross examination of the defendant, to prove by the defendant that for the calendar years 1929 and 1930 his real estate in the Seventh District of Madison County was for each of said years assessed for taxation as two separate tracts, one tract of 471 acres assessed for taxes at $7,000, and the other tract of 46 acres assessed at $450, and that it was error for the court to exclude said evidence. The sixth assignment is directed to a portion of charge of the court, which will later be referred to, and the seventh assignment is also directed to another portion of the charge of the court to the jury, and which will also be later referred to. The eighth and ninth assignments are based upon the action of the court in refusing to give two respective special requests, submitted by

petitioner, in charge to the jury. The tenth assignment is likewise directed to the action of the court in refusing to give in charge another special request submitted by petitioner. The eleventh assignment is a broad challenge to the action of the court in rendering judgment for the amount of the jury verdict, and in denying petitioner's motion for a new trial.

We will not take up and dispose of each of the several assignments of error in the order in which they are presented. The first four assignments go to the question of the value of the property taken and the incidental damages, if any, to the remainder of the land across which the right of way taken runs. By the fifth assignment of error it is contended that it was competent for petitioner to prove on the cross-examination of J. D. Hughes the amount at which the entire tract of land involved, and out of which the right of way is taken, was assessed for taxes for the years 1929 and 1930, and that it was error of the court to sustain the objection of defendant to this evidence.

In the case of Wray v. Railroad, 113 Tenn., 544, in the eighth headnote, it is said:

"A paper purporting to be an assessment blank or schedule for the purpose of taxation in the tax assessor's office, proved to have been handed in by the husband of the complainant, containing the valuation of a number of lots, including the lot, a part of which was condemned and taken for public use, but not showing the separate value of the particular part of said lot so condemned and taken, and purporting to be signed by the complainant, but without proof of her signature is not admissible or competent to prove the value of the land so condemned and taken."

In the present case Mr. Hughes testified that he did not turn the property in for taxation and did not sign the schedule, but that the valuation was placed thereon by a tax assessor. For the benefit of the record, the attorney for petitioner was permitted to examine Mr. Hughes in the absence of the jury on this subject. It was not sought to be shown that the particular land taken for this right of way was separately assessed for taxation.

In Wray v. Railroad, supra, speaking on this subject, the court said:

"The valuation, if made of the lot by the petitioner Mrs. Wray, was for a wholly different purpose from the present one. This court knows judicially and as a part of the financial history of the state, that land is never assessed for purposes of taxation at its real cash market value, though that may be the law, but only in comparison with other lands around it, and if petitioner valued it, we would presume she placed such comparative value, instead of the real market value upon it.

"It is said in Lewis on Eminent Domain, Section 448, that the assessment of property for taxation being made for other purposes, and not at the instance of either party, and not usually at the market value of the property, is not admissible as evidence of value in condemnation proceedings.

"We think that admission of the schedule was improper."

From this authority it appears that it was not only not error for the learned trial judge to exclude this evidence, but it would have been error to have admitted it. The fifth assignment is over-ruled.

That portion of the charge of the court made the basis of the sixth assignment is as follows: "The two issues to be determined in this law suit are these: In the first place the defendant is entitled to a verdict by this jury for the value of the strip of land set out in the petition in this case, and you will return a verdict upon that question for the defendant Hughes, setting out in dollars and cents the amount you find in his favor as the value of said land. In determining the amount of such verdict, you will look to the evidence of the witnesses as to the value of said land. The proper rule is this: That the fair cash value of the land taken if the owner was willing to sell and the purchaser desired to buy, that particular quantity at that place, and in that form, would be the measure of compensation. It is not in the nature of a wrongful taking for which damages are to be assessed, nor is it a claim for any wrong or damage done, but the appropriation of the property is legal and rightful, as much so as if the owner had voluntarily sold it to the purchaser and the only open question was, what is a fair price for the property? What is its value? Incidental advantages and disadvantages, benefits and injuries are to be left entirely out of view in making the estimate; the owner's willingness to sell or the location of the strip of land on the owner's property and the necessity the petitioner may be under to have the land at the particular place on the other are to have no influence on price. The property is to be valued on the same principle and on consideration as if both parties had agreed upon a sale, and one had been willing to sell and the other had been willing to buy at a fair cash market value."

The criticism to this charge especially contends that the trial judge did not state to the jury that the market value referred to would be as of the date taken, but left the jury to find the market value at any time either prior to or subsequent to the taking. This criticism is highly technical, and we think without merit. The evidence of several witnesses on the question of value was specifically confined to the value of the property at the time taken, and certainly the jury could not have understood this charge to refer to the

market value at any time other than the time when the property was taken. This assignment is accordingly overruled.

The seventh assignment challenges the correctness of the portion of the charge on the question of incidental damages, and wherein the court stated:

"The other question to be determined by the jury is as to whether there are any incidental damages arising to the defendant by reason of the taking of said strip of land. In other words, has the remainder of his land been depreciated in value by reason of the taking of said strip of land. The petitioner acquires a permanent easement on the strip of land described in its petition, and the right of the petitioner to use this strip of land for the purpose of its business and to control it and limit the right of defendant in its use is fixed by law. The petitioner has the right to occupy the whole of said strip of land at any time the exigencies of its business may demand such occupation. It has the right to exclude the owner from the strip when necessary. It has the right to enter upon the strip for the purpose of improving, repairing and building additions to its line or lines, and any right the owner has to use the premises is subordinate to prior and superior rights of the petitioner." His interest in the property has been reduced to that of a servient estate, subject to the rights of the petitioner, as petitioner may exclude him absolutely from said premises at any time the exigencies of its business may require, and the rights of the defendant in said strip of land are merely permissive and subject to the permanent right of revocation by the petitioner."

Under this assignment of error it is said that the above portion of the charge left the jury to understand that the law gave plaintiff the arbitrary right to wholly exclude defendant from any use of the right of way strip at all times, if plaintiff merely so desired. "In other words, the jury was left to infer and left to assume from this charge that petitioner's right to exclude defendant absolutely from said premises at any time the exigencies of its business may require, is an arbitrary right under the law, which plaintiff could capriciously exercise without any right of defendant to question, whether the exigencies of the plaintiff's business reasonably required that defendant be absolutely excluded at all times from any use of the strip of land included in the right of way condemned." Appellant takes the concluding words of the charge as the basis for the contention above made, wherein the court says to the jury—"The rights of the defendant in said strip of land are merely permissive and subject to the permanent right of revocation by the petitioner," and insists that under this language the jury could well infer that the owner of the easement could capriciously, at any time it so desired,

act arbitrarily, and, without just reason, prevent defendant from having any use of said condemned strip of ground.

The charge of the court on this subject shall be considered as a whole. When the charge with reference to incidental damages as given by the court is considered in its entirety, the meaning of the court is made clear. The court had said to the jury that the right of the owner of the easement was paramount to that of the fee owner, and the fee owner's right was servient to the dominant right of the easement owner. The court also told the jury, in effect, that the owner of the fee could use the property in such a way as not to be inconsistent with the rights of the owner of the easement, and that such use would be permissive and subject to revocation if the owner of the easement needed or required the property in the exigencies of its business and for the use of the same for the purpose for which it was condemned. We do not think that this language was lacking in clarity, nor do we think that the jury could have construed the charge as contended by appellant.

We find no error under this assignment and it is accordingly overruled.

The eighth, ninth and tenth assignments are directed to the action of the court in refusing to give certain special requests tendered by the petitioner. We have examined these special requests, and we have also carefully examined the general charge of the court.

We are of the opinion that the general charge on the subject of incidental damages and incidental benefits is a clear and accurate statement of the rules governing the question. In the general charge on this subject the court instructed the jury as follows:

"The defendant in this case contends that the value of the remainder of the tract of land has been damaged in its value by reason of the taking of said strip of land. The burden of proof is upon the defendant to show by preponderance of the evidence that the remainder of his land has been damaged in this respect. If the defendant has shown to the jury by a preponderance of the evidence that the balance of the land has suffered incidental damages by reason of the taking of this strip of land, you will find in your verdict for him upon the question of incidental damages and return a verdict to that effect and set out in dollars and cents the amount you find in his favor.

"In determining the question as to whether or not the defendant has suffered any incidental damages, you look to the evidence of the witnesses, you look to the location of the strip of ground acquired by the petitioner on the defendant's land, look to whether or not his land has been rendered less suitable for the building of houses, or for free access to the public road, or

free access from one part of his land to the other part, as to whether or not by reason of the taking of the strip of land has reduced the balance of the land in its value.

"In determining the question of incidental damages you also look to the question of whether the defendant has received any incidental benefits by reason of the taking of said strip of land, whether or not the accessibility of defendant to light and power from the line in question results in incidental benefit to the remainder of his land, and if so, take that into consideration in estimating any incidental damages he may have suffered. In considering the question of incidental benefits, the jury will not take into consideration any benefits arising from the construction of this line which will come to all others in the same vicinity or neighborhood, because that would be a benefit common to all, but if you find any special benefits arising from such construction to the defendant's land, you will take that into consideration in the matter of estimating his incidental damages."

We think that this instruction to the jury on the subject of incidental damages to the remainder of the tract of land, and also of incidental benefits, is sufficiently full, clear, and intelligible, and fairly presents the question. To have given the special requests asked for would have tended to confuse the jury in view of the instructions already given on the subject. It results that the eighth, ninth and tenth assignments of error are overruled.

We come now to consider the question of the amount fixed by the jury and concurred in by the trial judge, both as to the value of the four and seven-tenths acres covered by the right of way easement, which was fixed by the jury at $500, and also the incidental damages as found by the jury at $900 for the remainder of the tract of land.

These two awards are separate, and will be separately discussed. On the question of the amount fixed by the jury as the value of the four and seven-tenths acres included in the right of way, there were ten witnesses who testified in behalf of the defendant Hughes, and eight in behalf of the petitioner. These several witnesses vary greatly in their respective estimates. The ten witnesses for defendant Hughes testified that the strip of land taken for right of way was over and across the best portion of the tract. The large tract contained approximately 460 acres, and the small tract about forty-six acres. A large part of the large tract of land is river bottom land and not subject to cultivation and is of but little value for farming purposes. The portion of the land taken for right of way purposes is on upland of good quality and the remainder of the strip taken for right of way purposes is on a good quality of bottom land in a high state of

cultivation. The value is placed by these ten witnesses on the four and seven-tenths acres covered by the right of way, at from $80 to $125 an acre. Most of these witnesses placed the value at $100 for the upland per acre, and $125 per acre for the bottom land. The eight witnesses who testified as to the value of the right of way strip and acreage, placed the value at a much lower figure. This land appears to be located several miles from Jackson and adjoining the Haywood County line. Several of petitioner's witnesses as to values were real estate men living in Jackson, and were not shown to have had any particular knowledge of the value of farm lands in the immediate vicinity of the lands involved.

We think the jury was well warranted, under the evidence, in fixing the value of the right of way land at $500. This valuation was concurred in by the trial judge, who heard the witnesses testify and had better opportunity of judging the value of the evidence offered by the respective parties than this court. We cannot say that the value as fixed by the jury on the right of way property was excessive under the evidence.

On the question of incidental damages as fixed by the jury, the several witnesses for the defendant Hughes fixed this amount from $1,000 to $3500. The eight witnesses for the petitioner were of the opinion that the incidental damages were fully met by the incidental benefits, and did not consider that the remainder of the tract of land for this reason would suffer any damage in excess of incidental benefits.

When we apply the amount to the entire acreage of land contained in the tract and across which the right of way runs we find that it is less than $2 per acre as incidental damages. Considering the value of the entire tract of land, a large portion of which is in a high state of cultivation and shown to be valuable, $2 per acre or less would be rather nominal. The question was fairly submitted to the jury under the evidence. There was abundant evidence to support the verdict. The learned trial judge, by his action in overruling the motion for a new trial, and who had had the opportunity of seeing and hearing the witnesses testify, concurred in this verdict. We cannot say that this verdict was excessive. We think it is well supported by the evidence.

This disposes of all the assignments of error. It follows that the judgment of the lower court is affirmed. Appellant and sureties on the appeal bond will pay the costs of this appeal.

Owen and Heiskell, JJ., concur.