# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

CITY OF MURFREESBORO, a )
Municipal Corporation in Rutherford )
County, State of Tennessee, )
                                 )
       Plaintiff/Appellant, )       Rutherford Circuit Consolidated
                                 )       Case Nos. 34626 and 34629
                                 )
vs. )
                                 )
MARIANN M. WORTHINGTON, )       Appeal No. 01A01-9703-CV-00124
                                 )
       Defendant/Appellee )
                                 )
CITY OF MURFREESBORO, a )
Municipal Corporation in Rutherford )
County, State of Tennessee, )
                                 )
       Plaintiff/Appellant, )
                                 )
vs. )
                                 )
THOMAS W. WORTHINGTON and )
wife, Mariann M. Worthington, )
                                 )
       Defendants/Appellees. )

**FILED**

**December 17, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

APPEAL FROM THE CIRCUIT COURT OF RUTHERFORD COUNTY
AT MURFREESBORO, TENNESSEE

THE HONORABLE ROBERT E. CORLEW, III, JUDGE

For the Plaintiff/Appellant:          For the Defendants/Appellees:

Thomas L. Reed, Jr.                Granville S.R. Bouldin, Jr.
Jerry E. Farmer                      Murfreesboro, Tennessee
Murfreesboro, Tennessee

**REVERSED AND REMANDED**

HOLLY KIRBY LILLARD, JUDGE

CONCUR:

ALAN E. HIGHERS, J.

DAVID R. FARMER, J.

**OPINION**

This is a condemnation case. The sole issue at trial was the amount of compensation the landowners should receive. A jury returned a verdict awarding the landowners a total of $30,500. On appeal, the appellant condemning authority contends that the trial court erred in allowing tax appraisals performed on the property to be introduced into evidence and that the trial court used the wrong valuation method. We reverse and remand for a new trial.

This appeal arises from two condemnation proceedings filed by the City of Murfreesboro ("City") in 1995. The City is constructing the Stones River Greenway, a linear park or "river trail" that borders the west bank of the Stones River. The Stones River flows in a general north-south direction through the city of Murfreesboro. The Greenway was developed by the National Parks Service as a means of linking together the various National Stones River Battlefield sites that exist throughout Murfreesboro. The City acquired the rear portions of properties backing up to the west bank of the Stones River, in some cases by voluntary sales by landowners, and in other cases by exercising its power of eminent domain. The Greenway is about three miles long, with a trail surface about twelve feet wide.

In 1970, Thomas and Mariann Worthington purchased nearly 16 acres of land, bounded on the west by Thompson Lane, a well-traveled three-lane road, and bounded on the east by the west bank of the Stones River. A portion of this land belonged solely to Mariann Worthington; the remainder belonged to the Worthingtons jointly. At the time of purchase, the land was low-lying and prone to yearly flooding. The western portion of the property that fronted Thompson Lane was capable of being filled in for a depth of 350 feet. The rear portion of the property was a no-fill zone which extended back to the centerline of the river for a distance of 200 feet. Mr. Worthington owned his own construction company. Over the course of several years, he filled in the western portion of his property which fronted Thompson Lane back to the no-fill zone. This resulted in a 10-15 foot drop off leading down to the river's edge. The Worthingtons subdivided the land and sold all but two non-contiguous lots (Tracts 7 & 10) at a substantial profit. The value of the subdivided lots, including Tracts 7 & 10, is derived from the fact that they are filled, zoned commercial, and front on Thompson Lane. Tracts 7 and 10, which were not sold, front on Thompson Lane and extend back to the centerline of the Stones River.

The City condemned the rear portions of Tracts 7 and 10 in order to establish the Greenway. The City certified that the Worthingtons would receive remainder parcels from the condemned land in order to retain irrigation rights from the river by means of an underground pipe. The larger of the two tracts, Tract 7, is solely owned by Mariann Worthington. The total area of Tract 7 amounted to 5.53 acres. The City condemned 2.53 acres, leaving Mariann Worthington with 3 acres. Tract 10 is the smaller tract and is jointly owned by the Worthingtons. Tract 10 encompassed 1.7 acres. The City took 1.05 acres, leaving a remainder of 0.65 acres.

Nearly all of the land condemned by the City fell within the no-fill zone. Of the 2.53 acres taken from Tract 7, 0.84 acres consisted of land from the middle of Stones river to the riverbank, with the remaining 1.69 acres running from the edge of the riverbank westward. Of the 1.05 acres taken from Tract 10, 0.52 acres ran from the centerline of the river to the riverbank, with the remaining 0.53 acres running from the riverbank westward. The record suggests that there were very limited uses for the land taken by the City. Thomas Worthington testified that the land taken floods regularly to a depth of 8-10 feet. Furthermore, the taken property had always been subject to a sewer easement.

The City appraised the land taken from Tract 7 at $2,550 and the land taken from Tract 10 at $1,050. The Worthingtons testified that the value of Tract 7 before the taking was worth $442,000, and after the taking the remaining land was worth $240,000. The 2.53 acres taken from Tract 7 was thus assigned the difference in value, $202,000. Using the same method of valuation, referred to as the "before-and-after" method of valuation, the Worthingtons testified that the value of the land taken from Tract 10 was $131,000. The Worthingtons did not claim incidental damages or benefits to their properties.

The Worthingtons' appraiser, John Shearron, Jr., also employed the before-and-after method of valuation. He testified that the value of the portion of Tract 7 taken by the City was $155,000, and that the value of the portion of Tract 10 taken by the City was $67,404. Neither the Worthingtons nor Shearron attempted to value the actual property taken, but rather arrived at their valuation by valuing the total property before the take, and subtracting from that the value of the remaining property after the take.

2

During cross-examination of the City's appraiser, counsel for the Worthingtons informed the jury of the county tax appraisals of Tracts 7 and 10 before and after the take. He noted that, before the take, Tract 7 was worth $160,200, after the take at $114,800, for a difference of $45,400. He also noted that Tract 10 was appraised at $77,500 before the take, and after the take at $36,600, for a difference of $40,900. The trial court allowed these valuations into evidence, over the City's objection. It is undisputed that the city of Murfreesboro does not employ a property tax assessor and that the Rutherford County tax appraiser appraises all property in the City of Murfreesboro for property tax purposes. The trial court permitted the Worthingtons to provide exhibits to the jury which listed the county tax appraisal values. During their deliberations, the jury requested the exhibits containing the tax assessment valuations. The trial court refused this request.

The jury then returned a verdict, setting the just compensation for the 2.53 acres taken from Tract 7 at $20,000 and the 1.05 acres taken from Tract 10 at $10,500. The City filed a motion for new trial. The City argued that the trial court improperly allowed the jury to consider the appraisal values found in the tax assessment records of the Rutherford County assessor. The trial court denied the City's motion for new trial. The City now appeals the decision of the trial court.

On appeal, the City asserts that the trial court erred in allowing the Worthingtons to introduce into evidence the Rutherford county tax appraisals. In addition, the City contends that the trial court erred by allowing the Worthingtons to introduce into evidence valuations deduced by using the before-and-after method of valuation. We first consider the issue regarding the use of the county tax appraisals.

Over the City's objection, the trial court allowed into evidence the Rutherford County tax appraisals of Tracts 7 and 10, both before and after the takings, and allowed counsel for the Worthingtons to show these documents to the jury. On appeal, the Worthingtons contend that the tax appraisals were never offered as proof of value, but instead were used to impeach the City appraiser. The trial court's directions to the jury were in accordance with this. In their appellate brief, the Worthingtons assert:

> While conceding that the tax valuations do not represent the fair cash market value
> of the property, it is nevertheless entirely appropriate to call into question the values
> of the City's appraisal witness that are twenty and forty times less than the tax
> valuation, a figure known to be uniformly less than actual fair market value.

3

In Tennessee, property tax valuations are not admissible to prove the value of a parcel or any portion thereof. *See Knoxville Housing Authority v. Bower*, 308 S.W.2d 398, 401 (Tenn. 1957); *West Tennessee Power & Light Co. v. Hughes*, 15 Tenn. App. 37 (Tenn. App. 1932); *Wray v. Knoxville, LaFollette & Jellico R.R. Co.*, 113 Tenn. 544, 82 S.W. 471 (Tenn. 1904). However, the parties dispute whether property tax valuations may be used for impeachment purposes.

*Wray* involved a proceeding to condemn a portion of two lots for railroad purposes. *Wray*, 15 Tenn. App. at 547. The only issue for the jury to determine was the amount of compensation. *Id.* The condemning authority was permitted to introduce into evidence a tax assessment record, over the landowner's objection. The tax assessment record contained a valuation of one of the lots by one of the appellant landowners. *Id.* at 559. It is unclear whether the tax assessment record was introduced for impeachment purposes, although the Court noted that the evidence did not establish that the signature on the record was that of the landowner. *Id.* *Wray* states:

> The law does not require an owner to value his real estate, but merely to describe it for the purposes of assessment for taxation. The valuation, if made of the [property] by the [landowner], . . . , was for a wholly different purpose from the present one. This court knows judicially and as a part of the financial history of the State that land is never assessed for purposes of taxation at its real cash market value, though that may be the law, but only in comparison with other lands around it, and, if [landowner] valued it, we would presume she placed such comparative value, instead of the real market value, upon it.
>
> It is said in Lewis on Eminent Domain, section 448, that the assessment of property for taxation being made for other purposes, and not at the instance of either party, and not usually at the market value of the property, is not admissible as evidence of value in condemnation proceedings.

*Id.* at 559-60. The admission of the tax assessment record was deemed improper, and the judgment was reversed. Thus, the *Wray* court noted that valuation for tax assessment purposes was "wholly different" from valuation to determine fair market value, and concluded that it was not admissible.

In the alternative, the Worthingtons contend that the tax assessment records were admissible as prior inconsistent statements. Whether this is really a different purpose is debatable, since the overall purpose remains to discredit the state's appraisal witness. Regardless, even though no Tennessee case has specifically addressed this argument, the majority of states which have considered it have deemed the tax assessment records inadmissible for this purpose. *See Alabama v. Griffith*, 290 So. 2d 162, 164 (Ala. 1974) (admission against interest theory is minority theory which Alabama does not follow); *Hetherington Letter Co. v. City of Cedar Rapids*, 207 N.W.2d 800, 801-803 (Iowa 1973) (tax valuation not admissible as admission against condemnor because

purpose is to fairly distribute costs of government, not to fix just compensation); ***Bergen County Sewer Authority v. Borough of Little Ferry***, 83 A.2d 4, 9 (N.J. Super. Ct. App. Div. 1951) (tax assessments inadmissable as admission by municipality); ***State Hwy. Comm'n v. Anderegg***, 403 P.2d 717, 718 (Or. 1965) ("great weight of authority" holds assessments not admissible as admission against interest by condemners); ***Girard Trust Co. v. City of Philadelphia***, 93 A. 947, (Pa. 1915) (city cannot be held to adopt action of another independent public agency which sets tax assessments); ***Wayland v. City of Seattle***, 165 P. 113, 114 (Wash. 1917) (tax assessments not a declaration against interest by city in condemnation cases because made by different officers performing distinct functions for different purposes). The rationale for this view is set forth in ***United States v. Certain Parcels of Land***, 261 F.2d 287 (4th. Cir. 1958):

> It is suggested that evidence of assessed value, offered by the landowner, may be received as an admission against interest when the assessing authority is the condemnor.
> ***
> Aside from the general unreliability of tax assessments as an indication of market value, which ought to make them suspect in any case, the assessing officials are representatives of the public. The power of a tax official to bind the public is limited, and what he does for purposes of taxation, should not be binding upon the public, or prejudicial to the public interest, when other public officials are engaged in the performance of a very different public function in an unrelated field. Though the tax official may purport to use market value as the criterion of assessed value, his primary concern is with relative, not absolute, values, but however he exercises his judgment for purposes of a reasonable distribution of the tax burden, his act, as an extrajudicial declaration, may not circumscribe the interest of the public in the difficult process of determining just compensation for property taken for public use.

***Id.*** at 291 (citations omitted). ***But see In re Site for Memorial Hall***, 25 N.W.2d 174 (Mich. 1946) (evidence of assessed value, offered by landowner, may be received as admission against interest when assessing authority is the sole condemnor); ***Louisiana Hwy. Comm'n v. Giaccone***, 140 So. 286 (La. 1932) (landowner allowed to use the assessed value as the minimum below which the condemnation price should not go, when state, through a different department, was attempting to take land for less than the assessment value.)

We find the majority view persuasive, and hold that admission of the tax assessment valuations into evidence in order to discredit the testimony of the City's appraiser was error.

The Worthingtons argue that any error in admitting the tax records into evidence was harmless, and does not warrant reversal. The jury in this case heard references to the tax appraisal forms during cross-examination of the City's appraiser. Counsel for the Worthingtons published the

tax appraisal forms to the jury during the trial and the jurors were allowed to take notes during the trial. The jury made a specific request during their deliberations to see the exhibits containing the values of the tax assessments. In a case such as this, where the asserted values of the taken property differed by such a significant amount, we cannot find that the error was harmless. The judgment must be reversed and the cause remanded to the trial court for a new trial. This holding makes it unnecessary to consider any remaining issues on appeal.

The judgment of the trial court is reversed and the case remanded for a new trial. Costs on appeal are taxed to the Appellees, for which execution may issue if necessary.


_____
_____HOLLY KIRBY LILLARD, J.


**CONCUR:**


_____
**ALAN E. HIGHERS, J.**


_____
**DAVID R. FARMER, J.**

6