KNOXVILLE HOUSING AUTHORITY, INC., Petitioner,

*v.*

B. A. BOWER et ux., Respondents.

(*Knoxville,* September Term, 1957.)

Opinion filed December 6, 1957.

TAYLOR H. COX, ARTHUR D. BYRNE and POORE, COX, BAKER & McAULEY, Knoxville, for petitioner.

JOE C. THOMASON, Knoxville, for respondent.

Mr. Justice Swepston delivered the opinion of the Court.

This proceeding commenced as a condemnation suit by the Knoxville Housing Authority and the only question involved was the value of the property taken. A jury verdict which was approved by the Trial Judge was in the amount of $11,500. The Court of Appeals reversed on two grounds, namely: that there was incompetent testimony admitted with reference to the testimony as to the amount of taxes on said property, and because one of the witnesses admitted on a motion for a new trial that he had under-estimated the area of the property, the Court of Appeals finding that these matters were prejudicial to the property owner.

Those two grounds are the basis of the two assignments of error filed by the petitioners.

The property involved was being used as a parking lot for the benefit of the employees of a manufacturing company, 90% of the stock of which was owned by Mr. Bower and the members of his family. The lot contained about 30,000 square feet but not all of the same was usable because it was low and a creek ran across the back end of it so that considerable filling was necessary in order to raise the surface to a level suitable for a parking lot. Mr. Bower owns the lot individually and receives rent from the corporation in the amount of $300 per month but he pays the taxes on same.

At the commencement of the condemnation proceedings the Housing Authority valued this property at $9,-

000 and paid that amount into Court. A jury of view was appointed who valued the property at $13,500. The Authority appealed to the Circuit Court where, as above stated, the jury verdict was $11,500.

At the trial there was a decided conflict among the witnesses as to the value of the property as well as the amount of available area for use as a parking lot. These witnesses, testifying for the owner of the lot and arriving at the same total value by different methods, stated that the lot as a whole was worth $18,000. The owner, Mr. Bower, himself testified that the lot was worth $1 per square foot for the entire 30,000 square footage, or a total of $30,000. On the other hand two witnesses testified for the Housing Authority. Joe Burdette testified that he handled the transaction in 1949 when Mr. Bower purchased the property; that there were 12,000 feet of available area for parking which he valued at 75c per foot or $9,000, and that the remainder was worth $2,500, giving a total of $11,500, the amount which the jury found in their verdict the property to be worth. The other witness Brakebill testified that he appraised the property for the Housing Authority; that there were only 8,000 feet of space available for parking lot which he valued at 90c per foot or $7,200 and that the remainder was worth $2,290, giving a total valuation of $9,490. On the motion for a new trial, however, he admitted that he had under-estimated the available space by 4,000 feet due to a mistake in his interpretation of the plat given him by the Housing Authority by which he determined the boundaries, but he insisted that the lot was worth no more than the total he had first stated above.

The opinion of the Court of Appeals states that if the matter were before them as an original proposition they would say that the preponderance of the evidence establishes a value greater than that fixed by the jury but such is not their function and that they are bound by the verdict, if supported by any material evidence in a trial free of prejudicial error.

Then discussing the two assignments of error in that Court which involve the same subject matter as the two assignments in this Court the opinion quotes from the testimony of witness Brakebill in chief:

"Q. You know what the taxes are on it?

"A. The assessment as reported to me—

"Mr. Thomason: Object

"The Court: Sustained.

"Mr. Byrne: Just what the taxes are.

"The Court: Taxes may be given, but the assessment may not.

"Mr. Thomason: Except.

"The Witness: A. They furnished me—

"Mr. Thomason: That would be hearsay.

"The Court: Q. Where did you get the figure?

"A. Housing Authority.

"Mr. Thomason: Bound to be hearsay.

"The Court: Overruled.

"Mr. Byrne: Go ahead.

"A. $11.88."

The opinion then is as follows:

"It may be conceded that the question of taxes on this property was relevant in view of the fact that it had been testified it was renting for $300 per month and that a witness for the owners had testified to a 'rule of thumb' valuation of ten times the annual income, but which had not been adopted by this witness. There is no evidence in the record as to the tax rate in the City of Knoxville but counsel says it is $2.64, thus indicating an assessment of $450. At any rate, this tax showed a very low and entirely inadequate assessment. And eminent counsel for the condemnor was seeking to take advantage of this, in that the original petition said: 'The above described property is assessed for taxation by the State and County at a *value of $600,*' but this was stricken by the learned judge." (Emphasis ours.)

The first sentence of the above paragraph is unquestionably correct because the question of taxes was first raised by the property owner's witness, George Fritts, (R. 18) where he was asked and answered without objection that the income is looked to in valuing the property and that in arriving at the net income you would have to consider taxes and management expenses in operating a parking lot property (R. 24). See similar testimony of the witness Wallace (R. 50). Then R. 73, Mr. Bower testifies

"What expense of operation did you have of producing income it is worth?

"A. None. I get $300 net for it, and Campbell Mfg. Co. takes care of it, except I pay the taxes."

On the next page he was asked and answered:

"Q. You get only $270 of the $300?

"A. Yes."

Then as to the rest of that paragraph, there is no evidence as to the tax rate in the City of Knoxville to indicate an assessment of $450 nor is there any evidence that the jurors or any of them knew what the tax rate was. Then the last quoted part of said paragraph is a misstatement of fact occurring both in the opinion of the Court of Appeals as well as in the brief in behalf of the property owner. The petition for condemnation (R. 3) does not contain the figure $600 but is perfectly blank. Of course the testimony of this witness as to the amount of the tax was hearsay because it was furnished him by somebody in the Housing Authority, but the question is whether or not the evidence was prejudicial so as to require a reversal.

In the charge of the Court to the jury there was no mention of the tax matter nor was there any special request for any limitation on the admissibility of this evidence.

Then the opinion of the Court of Appeals refers to the testimony of the only juror who was called to testify on the motion for a new trial. He testified as follows as set out in the opinion of the Court of Appeals:

"Mr. Thomason: The question I asked was whether or not the jury in its deliberations took into consideration this testimony with reference to what the taxes were on this property, and what it was assessed at.

"The Witness: A. The answer would obviously have to be yes, along with other factors determining that. I wouldn't say what the other eleven jurors took into consideration. The answer is in the affirmative to the extent it was mentioned."

Cross Examination, By Mr. Byrne:

"Q. I guess you recall one witness Mr. Joe Burdette testified he had more experience probably than anybody else with this lot, and he put a value of $11,500 on it.

"A. To be frank, I don't remember what values the various witnesses came up with. There was quite a variance of opinion as to the appraisal of the lot. As I told Joe the other day, the use of the lot was considered, yes, but among other thing, it was the income of the lot, what it would cost to operate the lot, value of the property near by, distance away from it, and it was brought out something about taxes and then what the property, by implication might have cost in taxes. Don't remember specific figures. The jury took all the factors into consideration, but how much weight was given to the various factors, obviously, I don't know.

"Q. As far as you know, the jury considered everything and gave it proper weight?

"A. Yes. I can't speak of course for the other fellows."

The opinion then construes the testimony of this juror to mean that they considered evidence of the assessed value of the property which, of course, is not competent evidence of the market value of the property at all as

stated in said opinion in which is cited *Wray v. Knoxville L. F. & J. R. Co.,* 113 Tenn. 544, 82 S.W. 471, and *West Tennessee Power & Light Co. v. Hughes,* 15 Tenn. App. 37.

It is a fair assumption from the fact that the amount of taxes was before the jury and from the statement of this juror Ihle that the jury considered the amount of taxes very low on such a lot of this kind but it is difficult for us to see how it could fairly be said to have affected the verdict, for the reasons following herein.

The Court of Appeals then, referring to the error made by the witness Brakebill in his estimate of the amount of area, refigured the value of the property according to his testimony to be $13,090. The opinion then closes with the following statement:

"Thus we have the significant fact that the jury adopted the very lowest figure presented by these experts. This in and of itself does not invalidate the verdict. Such was their exclusive privilege. But we know that, whether by way of compromise or in the sincere belief that the truth is to be found between two extremes, verdicts in cases of this nature are generally between the highest and lowest estimates.

"We cannot escape the conviction that these two occurrences—the incompetent evidence as to taxes and the mistake of Mr. Brakebill—prejudiced the rights of the owners and constitute reversible error.

"Reversed and remanded at the cost of condemnor."

With deference to the opinion of the Court of Appeals we are unable to agree with same. As heretofore stated,

there was a decided conflict between the testimony of Mr. Bower himself and that of his three principal witnesses with reference to the value per square foot of the entire lot; there was a wide discrepancy between the witnesses for the two sides with reference to a usable area embraced within the boundaries of the lot; there was a wide difference of opinion as between the two sides with reference to the value per square foot. The jury chose to believe the witness Burdette and fixed their verdict in the exact amount of his figure of $11,500. See *Board of Mayor & Aldermen of Covington v. Moore,* 33 Tenn. App. 561, 570, bottom, 232 S.W.2d 410; Tenn.Law Review, vol. 24, No. 8, 1957, page 1166 et seq. It is of no significance that this was the lowest figure offered by any witness except Brakebill who admittedly was in error as to the amount of area. We do not construe the testimony of the juror Ihle to be that the jury gave any serious consideration to the amount of the taxes and certainly, if any of them figured that the assessment was $450, this would be so absurd and so far removed from the value as testified to by witness Burdette as to bear no possibility of prejudice.

.We, therefore, reverse the Court of Appeals and enter judgment for the amount as found by the jury and approved by the Trial Judge.