**In re George LEE, Jr., Debtor.**

**George Lee, Jr., Plaintiff,**

**v.**

**Bank One, N.A., Defendant.**

**Bankruptcy No. 98–15407.**
**Adversary No. 99–1305.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Jan. 5, 2000.

---

Geoffrey J. Peters, Cleveland, OH, for Bank One.

Joan Kodish, Cleveland, OH, for debtor.

Myron Wasserman, Cleveland, OH, trustee.

### MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

George Lee, Jr. (the debtor) filed his Amended Complaint to avoid a lien affixed on his personal residence by the defendant Bank One, N.A. (Bank One). He seeks to avoid the lien pursuant to §§ 502(b)(1) and 506(d) of the Bankruptcy Code [11 U.S.C. §§ 502(b)(1) and 506(d)].

Upon consideration of the evidence admitted and the record, generally, the relief sought is denied and the Complaint is dismissed.

Core jurisdiction is acquired under 28 U.S.C. §§ 1334 and 157(K) and (O). The following findings of fact and conclusions of law are rendered.

The Debtor is a co-owner of residential property located at 929 Parkway Road, Cleveland, Ohio 44108–3147. He acknowledges the existence of liens held by Key Bank and The Money Store on his residence but disavows any lien interest asserted by Bank One. The Court must determine whether (1) the Debtor is empowered under applicable law to avoid a lien on his personal residence; and (2) whether his Complaint addresses a matter upon which relief can be granted.

The Debtor contends that he never applied to Bank One for any financing on his residence or for any other purpose. Bank One asserts that not only did the Debtor apply for its financing through its authorized broker, Chrystal Mortgage, the transaction was actually closed at the Debtor's residence with the Debtor and other signatories present.

The principal issue is whether the Debtor is authorized to seek avoidance of the subject lien. The Code sections he cites to support his claim, §§ 502 and 506, are not lien avoidance statutes. In perti-

nent part, § 502(b)(1) of the Code provides:

§ 502. Allowance of Claims or Interests.

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured;

In pertinent part, § 506(d) of the Code provides:

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless—

(1) such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

■ As captioned, § 502 was enacted by the Congress only to address the allowance of claims or interests—not to avoid liens. Subsection (b) of § 502, upon which the Debtor seeks relief, prescribes the grounds on which a claim may be disallowed. More specifically, subsection (b)(1) provides for disallowance if the claim is unenforceable against the debtor for any reason (such as usury, unconscionability, or failure of consideration) other than because it is contingent or unmatured. In no respect is § 502(b) a lien avoidance statute. See, House Rpt. 95–595, 95th Cong. 1st Sess. 352 (1977), U.S.Code Cong. &

Admin. News 1978 p. 5963; Senate Report No. 95–989, 95th Cong., 2d Sess. 62 (1978), U.S.Code Cong. & Admin. News 1978 p.5787.

■ The Debtor's reliance for relief under § 506(d) to avoid Bank One's lien is also misplaced. The legislative purpose of § 506 is to provide a statutory means for determining the extent of a claimed security interest. It is not a lien avoidance statute.

As may be discerned from the above-quoted language, § 506 determines the amount of a secured claim. It does not provide for the allowance or disallowance of a claim. Its legislative purpose, which addresses no lien avoidance objective, states:

Subsection (d) permits liens to pass through the bankruptcy case unaffected. However, if a party in interest requests the court to determine and allow or disallow the claim secured by the lien under section 502 and the claim is not allowed, then the lien is void to the extent that the claim is not allowed. The voiding provision does not apply to claims disallowed only under section 502(e), which requires disallowance of certain claims against the debtor by a codebtor, surety, or guarantor for contribution or reimbursement. [House Report 95–595, 95th Cong., 1st Sess. 357 (1977); cf. Senate Report No. 95–989, 95th Cong., 2d Sess. 68 (1978).]

■ The primary lien avoidance statute available to consumer debtors is found at § 522(f) of the Bankruptcy Code.[1] Its force and effect, however, is subject to certain limitations. Liens avoidable under § 522(f) must necessarily be either certain types of judicial liens or a nonpossessory, nonpurchase-money security interest in specific types of personal property. Unfortunately, for the Debtor, the type of lien he seeks to avoid is outside the scope of § 522(f).

---

1. The Debtor's Complaint was not premised on § 522(f). More significantly, the case trustee filed no lien avoidance action respecting this matter.

■ The Debtor, ineffectively, is attempting to utilize lien avoidance powers entrusted by the Congress to duly appointed case trustees. In limited circumstances, a Chapter 13 debtor may utilize such powers but only to the extent necessary to protect a debtor's exemption entitlement. See, § 522(h). In the present matter, however, the Debtor has failed to articulate such a purpose and prosecute under the enabling avoidance statutes.

The scenario surrounding this attempted lien avoidance action is rather extraordinary, notwithstanding the finding herein that the Complaint is statutorily deficient. The Debtor's alleged signature appears on a second mortgage and promissory note held by Bank One wherein the Debtor disavows the signature which purports to be his signature. He testified he has never had any transaction with Bank One, including credit cards, and only learned of the Bank One mortgage when his bankruptcy counsel sent him a copy of it in 1998. (Exhs. A and B). The promissory note which contains the Debtor's alleged signature is in the amount of $25,149.00 (Exh. A). Not only does the Debtor state that his true signature does not appear on either the mortgage or the promissory note of Bank One, he denies ever having made any payments to Bank One or authorized anyone to make payments on his behalf to Bank One. (Debtor, Direct). He also contends that he never executed a forbearance agreement with Bank One (Exh. 5) which was executed to circumvent a foreclosure contains his alleged signature on his home. That document, likewise, contains his alleged signature which the Debtor disavows.

■ The burden of proof in lien avoidance matters, generally, is upon the party seeking to avoid a lien. The burden must be carried, at least, by a preponderance of the evidence. Herein, the Debtor is reposed with that burden but has not met his burden of proof. His testimony that the signatures appearing on the subject mortgage, promissory note, and forbearance agreement was not his is not only self-serving but was not corroborated. As the validity of the various signatures is the gravamen of the Debtor's contention, one would reasonably expect the presentment by the Debtor of objective expert testimony with appropriate hand-writing exemplars. This was not shown. Nor did the Debtor present the testimony of other individuals whose signatures purportedly appear as co-obligors and witnesses to the documents he allegedly signed. This would have been of significant probative value, as his two sisters who live in the unit above him in the two-family flat were named as co-obligors on the original mortgage note and the mortgage and note of Bank One (Exhs. A and B). Not only did he fail to offer testimony from such individuals, including his nephew, Allen Lee, who witnessed the Bank One mortgage closing, no affidavits were introduced into evidence from such persons.

Jacqueline Taylor–Wimbley, a mortgage broker with Chrystal Mortgage, offered testimony on behalf of Bank One. She testified, unequivocally, that she went to the Debtor's home and processed the closing of a loan which resulted in Bank One's second mortgage on the Debtor's residence. She identified the Debtor in the courtroom during the trial as the applicant and person whose residence she visited in order to process the closing. She spoke with certainty of the Debtor's identity and residence location as it was only one of two closings she had ever transacted during her eight years of employment in the mortgage lending industry. Ordinarily, the closing would have occurred in her office, however, due to the Debtor's reported illness, she personally went to his home to close the transaction. In compliance with her company's policy, she obtained both photo and non-photo identification of each person signing the closing documents, including that of the Debtor. She possessed sufficient recollection of this particular closing to remember that she obtained the Debtor's signatures and identification

while he was confined to his bed during his illness. She obtained signatures from both of the Debtor's sisters during the closing. Her testimony in this regard was credible.

Accordingly, the statutory provisions upon which the Debtor seeks a lien avoidance are not applicable and, consequently, he has failed to state a claim upon which relief can be granted. For these reasons, the Complaint must be dismissed. Each party is to bear its respective costs.

IT IS SO ORDERED.