# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

01-6041WM

_____

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Dean Allen Kolich and | * | |
| Michelle Kolich, | * | |
| | * | |
| Debtors. | * | |
| | * | |
| Dean Allen Kolich and | * | |
| Michelle Kolich, | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Appellants, | * | Western District of Missouri |
| | * | |
| v. | * | |
| | * | |
| Antioch Laurel Veterinary Hospital, | * | |
| Inc., P.C., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: January 25, 2002
Filed: February 22, 2002

_____

Before KRESSEL, SCHERMER and DREHER, Bankruptcy Judges.

_____

DREHER, Bankruptcy Judge.

This is an appeal from an order of the bankruptcy court which avoided a judgment creditor's lien only in part. For the reasons that follow, we reverse and hold that the lien should have been avoided in its entirety.

FACTS

In 1992, Dean Kolich purchased a veterinary practice from Antioch Laurel Veterinary Hospital, Inc., P.C. ("Antioch"). Dean and Michelle Kolich ("Debtors") guaranteed payment of the purchase price. In 1998, Debtors purchased a home ("the property"). World Savings Bank financed the purchase and recorded a first Deed of Trust on the property which it promptly perfected. The balance due on the loan was $219,018.60 as of April 2, 2001.

Debtors fell behind in making payments to Antioch and Antioch filed suit. Antioch prevailed in this litigation. On September 13, 2000, it recorded its judgment against Debtors in the amount of $133,875.00. The judgment lien was a second priority lien on the property.

On December 5, 2000, Debtors borrowed $80,000 from Norbank and gave Norbank a second Deed of Trust on the property. By error, Norbank had failed to discover Antioch's judgment lien before it made the loan. Thus, Norbank's lien on the property was in third position of priority. Michelle Kolich took the $80,000 loan proceeds to Las Vegas in a "last ditch" effort to gamble the couple out of debt.[1] Unfortunately, she failed.

[1]Antioch asserts that Michelle fraudulently induced Norbank to lend money without disclosing her intentions for use of the loan proceeds and that her story that she stuffed $80,000 in cash in a purse and gambled the money away in Las Vegas is unbelievable. These allegations were part of a separate adversary proceeding Antioch commenced against the Debtors seeking denial of discharge under § 727 of the Bankruptcy Code. That case was tried to conclusion and judgment entered in favor of Debtors while this appeal was pending.

On April 13, 2001, Debtors filed a Chapter 7 petition. In their bankruptcy schedules they valued the property at $275,000.00, which is an agreed-upon valuation for purposes of these proceedings. Shortly after filing the petition, Debtors filed a motion under § 522(f) of the Bankruptcy Code to avoid Antioch's judgment lien. Antioch objected, claiming that since the two Deeds of Trust would absorb the full value of the property, its judicial lien did not impair the Debtors' exemption or, in the alternative, that the lien is avoidable only to the extent of the $8,000.00 exemption allowed under Missouri law.

The bankruptcy court held that Debtors were entitled to avoid Antioch's lien even though the consensual liens on the property exceeded its value and the Debtors had no equity. The court further held that Antioch's lien impaired the exemption to the extent Antioch's judgment lien exceeded the amount reached by deducting from the value of the property the amount owed to World Bank and the $8,000.00 exemption, but not the amount owed to Norbank. After subtracting the World Bank debt ($219,018.60) plus the exemption amount ($8,000.00) from the fair market value of the property ($275,000.00), $47,981.40 remained. The bankruptcy court allowed Antioch to retain its judgment lien in this amount and avoided the remainder of the judgment lien ($85,893.60).

Debtors assert that the bankruptcy court failed to properly apply the mathematical formula set forth in § 522(f)(2)(A) of the Bankruptcy Code when it failed to include the amount owed to Norbank in making the calculation. Debtors contend that a literal reading of the mathematical formula set forth in § 522(f)(2)(A) requires the entire judicial lien be avoided.

DECISION

This appeal raises legal, not factual, issues. Thus, we review the bankruptcy court's decision *de novo*. Blackwell v. Lurie (*In re* Popkin & Stern), 223 F.3d 764,

765 (8th Cir. 2000); <u>Hatcher v. United States Trustee (*In re* Hatcher</u>), 218 B.R. 441, 445-46 (B.A.P. 8th Cir. 1998).

The bankruptcy court was correct when it determined that Debtors were entitled to lien avoidance even though they had no equity in the property. *See In re* <u>Freeman</u>, 259 B.R. 104, 110 (Bankr. D. S.C. 2001). It erred as a matter of law, however, in not allowing Debtors to avoid Antioch's lien in its entirety.

Section 522(f)(1) of the Bankruptcy Code permits a debtor to avoid a nonconsensual lien which prevents a debtor from taking full advantage of an otherwise valid exemption:

> (f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is–
>    (A) a judicial lien.

11 U.S.C. § 522(f)(1)(A). "Almost from the beginning of the Code's enactment, courts seemed to have [had] difficulty applying § 522(f), especially when multiple liens encumbered real estate." Margaret Howard, "Avoiding Powers and the 1994 Amendments to the Bankruptcy Code," 69 AM. BANKR. L.J. 259, 269 (1995); *see also* David G. Epstein, Steve H. Nickles & James J. White, BANKRUPTCY § 8-28, at 560 (West 1992)(describing various approaches).

In the 1994 Amendments to the Bankruptcy Code Congress attempted to rectify this problem by setting forth the mathematical formula to be used to determine whether a judicial lien impairs an exemption:

> (2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of–

> (i)    the lien,
>
> (ii)    all other liens on the property; and
>
> (iii)    the amount of an exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

11 U.S.C. § 522(f)(2)(A). Section 522(f)(2)(A) "provides a simple arithmetic test to determine the extent to which a lien impairs an exemption of specific property. The exemption is impaired to the extent the total of all liens on the property plus the exemption exceed the fair market value of the property." *In re* Gostian, 215 B.R. 237, 238 (Bankr. M.D. Ala. 1997)(footnotes omitted); *see also In re* Diegel, 206 B.R. 194, 196 (Bankr. D. N.D. 1997);  F.D.I.C. v. Finn (*In re* Finn), 211 B.R. 780, 782-84 (B.A.P. 1st Cir. 1997); *In re* Duvall, 218 B.R. 1008, 1014 (Bankr. W.D. Tex. 1998). According to Debtors, application of that simple arithmetic test results in the following calculation and supports their claim that Antioch's lien must be avoided in its entirety:

| | | |
|---|---|---|
| (i) | "the lien" | |
| | Antioch's judicial lien | $133,875.00 |
| (ii) | "all other liens on the property" | |
| | World Bank first Deed of Trust | $219,018.60 |
| | Norbank second Deed of Trust | $ 80,000.00 |
| (iii) | "the amount of any exemption that the debtor could claim if there were no liens on the property" | |
| | Homestead exemption[2] | $   8,000.00 |

---

[2]Debtors claim Missouri's homestead exemption of $8,000.00. The Missouri homestead exemption statute provides, in part:

> The homestead of every person, consisting of a dwelling house and appurtenances, and the land used in connection therewith, not exceeding the value of eight thousand dollars, which is or shall be

|  | $440,893.60 |
|---|---|
| "the value that the debtor's interest in the property would have in the absence of any liens" | -$275,000.00 |
| Extent of impairment | $165,893.60 |

Debtors argue that, since the total liens plus the amount of the exemption exceed the value of the property by $165,893.00, they should be entitled to avoid any judicial liens up to that amount, which would include the full amount of Antioch's $133,875 lien.

Antioch urges, and it did so successfully in the bankruptcy court, that a literal application of the mathematical formula in § 522(f)(2)(A) produces an unfair result. This is because such an application allows the Debtors to upset the state law priority position of a judicial lien creditor simply by increasing the indebtedness on the property by granting a new junior lender a consensual lien. In this case, Antioch points out, literal application of the mathematical formula allows the Debtors to use the debt to Norbank, a creditor with a wholly unsecured claim in bankruptcy, to erase a prior judicial lien (*see* 11 U.S.C. § 506(a)).

We begin "where all such inquiries must begin: with the language of the statute itself . . . . In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989 (internal citations omitted)); *see also* Arkansas AFL-CIO v. F.C.C., 11 F.3d 1430,

---

used by such person as a homestead, shall, . . . be exempt from attachment or execution. The exemption allowed under this section shall not be allowed for more than one owner of any homestead . . .

MO. REV. STAT. § 513.475.1 (Supp. 2001).

1440 (8th Cir. 1993)(opinion on rehearing); *In re* Young, 269 B.R. 816, 822 (Bankr. W.D. Mo. 2001). Section 522(f)(2)(A)(ii) refers to "all other liens on the property" and requires their inclusion in the calculation. The Bankruptcy Code defines a lien as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). Norbank's second Deed of Trust falls within that definitional language and accordingly should have been included in the calculation. The lien avoidance formula and the statutory definition, read together, plainly so require.

The bankruptcy court apparently found this language ambiguous and seems to have concluded that an unsecured claim such as that held by Norbank is not a lien within the meaning of § 522(f)(2)(A)(ii).[3] This confuses the definition of a secured claim under Section 506(b) of the Bankruptcy Code with "lien" as defined in Section 101(37). Section 522(f)(2)(A)(ii) refers to "all other liens" and does not distinguish between liens that are supported by collateral value and those that are not. There is no suggestion in the language of the statute or in any legislative history that Congress intended to exclude under or unsecured consensual liens in the calculation. However unsecured or undersecured the claim of Norbank may be under section 506(b), it is still clearly a lien as defined in section 109(37).

The section by section analysis which accompanied the 1994 Amendments supports this conclusion. The House Report states that the amendment was designed to provide a simple arithmetic test to determine whether a lien impairs an exemption

---

[3]"But in bankruptcy parlance, a lien which is secured by no value at all is considered to be an unsecured claim, and not a lien at all. Thus, in applying the section 522(f)(2) formula, the court should only consider those liens which are secured by value. Such a reading is consistent with the language of both section 522(f)(2) and 506(a)." *In re* Kolich, 264 B.R. 544, 550 n. 28 (Bankr. W.D. Mo. 2001).

by adopting the formula used in In re Brantz, 106 B.R. 62 (Bankr. E.D. Pa. 1989).[4] H.R. REP. NO. 835, 103d Cong., 2d Sess. 52-54 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3361-63.

In Brantz, the bankruptcy court applied a formula similar to that set forth in § 522(f)(2)(A) and one which ordinarily will reach the same result. Brantz, 106 B.R. at 68. The Brantz court determined the value of the property, deducted the amount of all liens which were not avoidable, and then deducted the debtor's allowable exemption. Under the Brantz formula, if the result is a negative figure the lien is avoided; if positive, the lien is not avoidable to that extent only. Applying the Brantz formula to the facts in this case results in complete avoidance of the Antioch lien, just as does use of the formula set forth in § 522(f)(2)(A).[5]

The bankruptcy court correctly determined that the Debtors were entitled to avoid Antioch's lien although they had no equity in the property. *See* Finn, 211 B.R. at 782. The section by section analysis makes clear that the amendments were intended to overrule several cases which had reached the opposite result. "The decisions that would be overruled involve several scenarios. The first is where the debtor has no equity in a property over and above a lien senior to the judicial lien the debtor is attempting to avoid, as in the case, for example, of a debtor with a home worth $40,000 and a $40,000 mortgage." H.R. REP. No. 835, 103d Cong., 2d Sess. 45 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3354. *See also* Freeman, 259 B.R. at 109 (". . . the view that lack of equity in the property precluded avoidance of a

---

[4]Brantz was also cited favorably by the United States Supreme Court in Owen v. Owen, 500 U.S. 305, 311 n. 4 (1991).

[5]From the value of the property ($275,000) deduct all liens which are not avoidable ($299,080.60) and the Debtors' allowable exemption ($8,000). The result is -$32,080.60. Since the result is a negative figure, the lien is avoided in its entirety.

judicial lien has been clearly overruled by the Bankruptcy Reform Act of 1994, in which Congress clearly stated that it intended to overrule that prerequisite and adopted instead the dissenting opinion in _In re_ Simonson . . . ."

However, the bankruptcy court incorrectly failed to apply a plain meaning to the statutory language because the court felt such a reading would upset state court priorities and produce an absurd result at odds with legislative intent. The bankruptcy court's emphasis on preserving state created priorities for the benefit of a prior nonconsensual judicial lien finds no support in the language of the amendment or in the legislative history. Rather, the 1994 amendments have created a federal definition of impairment which no longer looks to or depends upon state law. Holland v. Star Bank, N.A., (_In re_ Holland), 151 F.3d 547, 550 (6th Cir. 1998).

Moreover, the section by section analysis plainly states that Congress intended to overrule the majority and adopt the dissenting view in Simonson v. First Bank of Greater Pittston (_In re_ Simonson), 758 F.2d 103 (3rd Cir. 1985). H.R. REP. NO. 835, 103rd Cong., 2d Sess. 52-54 (1994), _reprinted in_ 1994 U.S.C.C.A.N. 3340, 3361-63. The dissent in Simonson explicitly ignored state law priorities in allowing lien avoidance. Simonson, 758 F.2d at 110 (Becker, J., dissenting).

In Simonson, the debtors owned a house valued at $58,250.00. The house was encumbered by a first mortgage in the amount of $25,145.95, two intervening judicial liens in the amount of $14,411.33, and a second mortgage in the amount of $41,314.84. Pennsylvania state law allowed that debtors a $15,000.00 homestead exemption. Debtors moved to avoid the two judicial liens pursuant to § 522(f). In his dissent Judge Becker not only disagreed with the majority and held that Debtors should be allowed lien avoidance even though they had no equity. He also held that the judicial liens were preserved in their priority position for the debtor's benefit:

I conclude that the judicial liens are avoidable in this case because if they are not avoided, upon distribution of the proceeds from the sale of the property, the judicial lienors will benefit from the sale of the property, and the Simonsons' exemption will not. This result, in my opinion, is contrary to the clear congressional intent that section 522(f) be available to benefit the debtor's exemption and his "fresh start," even at the expense of the interests of judicial lienors.

Simonson, 758 F.2d at 110-11 (Becker, J., dissenting). Under this dissenting view, Antioch's lien is avoidable even though it is prior to Norbank's Deed of Trust and Norbank has only an unsecured claim in the bankruptcy case.

The bankruptcy court relied heavily on certain language contained in the dissent in Simonson:

While the formula, as stated in section 522(f)(2)(A), does not consider the priority position of the judicial liens, the dissent in Simonson is predicated on the priority position of the judicial liens. It is a maxim of statutory construction that statutes should be construed in a manner that does not lead to an absurd result. Since there is no other Code section that allows a court to ignore the relative priority pre-petition position of liens, I find it would be an absurd result to construe section 522(f)(2)(A) to allow a debtor to erase an otherwise unavoidable judicial lien by taking out a junior mortgage.

In re Kolich, 264 B.R. at 550 (internal citations omitted).

The bankruptcy court was relying on the following language in Judge Becker's dissent to support his position: "In my view, under the structure of the Bankruptcy Code, the relative priority positions of the four encumbrances are critical." Simonson, 758 F.2d at 107 (Becker, J., dissenting). This is a misreading of Judge Becker's language. In his discussion of priorities, Judge Becker was merely saying that a prior judicial lien, even if avoidable, has to be considered when determining

whether a debtor has any interest in the property at all. *Id*. at 107 ("I believe that a judicial lien 'impairs' an exemption with respect to overencumbered property to the extent that the judicial lien, according to its amount and priority position, attaches to a portion of the value of the property."). This does not go to preserving state court priorities when actually applying the mathematical formula.

The bankruptcy court relied on, and Antioch cites to, several opinions decided since the 1994 amendment which have rejected a literal application of the statutory language where such application could appear to be at odds with congressional intent. *See, e.g.*, Nelsen v. Scala, 192 F.3d 32, 35 (1st Cir. 1999); Lehman v. VisionSpan, Inc. (*In re* Lehman), 205 F.3d 1255, 1257-58 (11th Cir. 2000). These cases represent a minority view of cases which have dealt with the question of how to value the debtor's interest in property when the debtor jointly owns the property with a non-debtor spouse. In such a case, literal application of the statutory formula may result in a windfall to the Debtor, allowing lien avoidance in excess of the statutory exemption amount. *See* Freeman, 259 B.R. at 108-110 (for a compilation of cases in the majority position). They have no application to the facts of the current appeal. These cases do not go to the application of the formula, but only to how to calculate the debtor's interest in the property. Permitting Debtors to avoid Antioch's lien in its entirety will not result in the kind of windfall the Nelsen and Lehman decisions sought to avoid. Rather, it furthers the expressed legislative purpose of bringing clarity to the process of calculating the debtor's preserved exemption and protecting a debtor's exemption rights against judicial liens. H.R. REP. NO. 835, 103d Cong., 2d Sess. 52-54 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3362.

Finally, we find no unfairness or absurdity in the result. As Judge Becker said in his dissent in Simonson:

> I realize . . . that some may object to a result that allows a debtor to obtain his homestead exemption, to the detriment of judicial lienors, even though the debtor knowingly overencumbered a property with

consensual liens. In enacting section 522(f), however, Congress has chosen to protect the interests of debtors while singling out judicial lienors as disfavored creditors.

Simonson, 758 F.2d at 112-13 (Becker, J., dissenting).

Section 522(f)(2)(A) is a congressionally mandated bright line formula for determining how to calculate the extent to which a judicial lien impairs an exemption. As with all bright line tests, at times it may seem a formulaic application brings unfair results. Yet, under the facts of this case, the perceived unfairness of allowing a Debtor to avoid a judicial lien which is prior to a junior consensual lien was anticipated by Congress. Congress chose clarity over possible unfair results.

Accordingly, we reverse the bankruptcy court's decision.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHTH CIRCUIT