**In re Julia B. NORTHERN, Roy W. Northern, Debtors.**

No. 02–35341.

United States Bankruptcy Court, E.D. Tennessee.

June 4, 2003.

---

Linda V. Bailey, Bailey, Roberts & Bailey, PLLC, Knoxville, TN, for Debtors.

William Stanton Massa, III, Morristown, TN, Edward J. Shultz, Hagood, Tarpy & Cox, PLLC, Knoxville, TN, for Colonial Loan Association, Inc.

Maurice K. Guinn, Knoxville, TN, Chapter 7 Trustee.

1. This amount consisted of $25,789.35 plus $2,500.00 attorneys' fees. The Default Judg-

## MEMORANDUM ON MOTION TO AVOID LIEN

RICHARD S. STAIR, Jr., Bankruptcy Judge.

This contested matter is before the court on the Motion to Avoid Alleged Lien (Motion to Avoid) filed on March 4, 2003, by the Debtors, seeking the avoidance of a judicial lien of Colonial Loan Association, Inc. (Colonial) under 11 U.S.C.A. § 522(f)(1)(A) (West Supp.2003) because it impairs their homestead exemption. Colonial filed a Response to Motion to Avoid Alleged Lien (Response to Motion to Avoid) on March 17, 2003, claiming that its lien has priority over a later consensual lien and, thus, should not be avoided as it does not impair the Debtors' homestead exemption.

Facts and documents essential to the resolution of the Debtors' Motion to Avoid are before the court on the Stipulations Regarding Motion to Avoid Alleged Lien filed by the parties on April 28, 2003, on the Amended Stipulations Regarding Motion to Avoid Alleged Lien filed on May 12, 2003, and on the Second Amended Stipulations Regarding Motion to Avoid Alleged Lien filed on May 23, 2003. Both parties filed briefs in support of their respective positions on May 12, 2003.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A), (B), (K), and (O) (West 1993).

**I**

On March 8, 1999, Colonial obtained a Judgment by Default (Default Judgment) in the amount of $28,289.35 [1] against the Debtors in the Chancery Court for Knox County, Tennessee. The Default

ment also awarded contractual interest.

Judgment was recorded with the Knox County Register of Deeds on April 27, 1999. By recording the Default Judgment, Colonial perfected a lien on any real property owned or later acquired by the Debtors prior to the lien's expiration. *See* TENN. CODE ANN. § 25–5–101(b) (2001) ("Judgments ... shall be liens upon the debtor's land from the time a certified copy of the judgment ... shall be registered in the lien book in the register's office of the county where the land is located.").[2]

On July 12, 1999, the Debtors purchased unimproved real property located at 8321 Chauvin Lane, Corryton, Tennessee (the Real Property) by Warranty Deed from Mary L. Bond (the Bond Warranty Deed). The Bond Warranty Deed was duly recorded with the Knox County Register of Deeds on July 20, 1999. In connection with this purchase, on July 7, 1999, the Debtors executed a Deed of Trust conveying the Real Property to Title Insurance Company of Knoxville, LLC, as Trustee for the benefit of Mary L. Bond (the Bond Deed of Trust), to secure the indebtedness owed in the amount of $16,000.00. The Bond Deed of Trust was recorded with the Knox County Register of Deeds on July 20, 1999.

On July 24, 1999, the Debtors executed a Retail Installment Contract and Security Agreement (the Contract) with CMH Homes, Inc., d/b/a Luv Homes Lot #50 (Luv Homes), for the purchase of a 1999 Franklin mobile home, with accessories, in the amount of $80,987.00. As additional security, the Debtors also executed a Deed of Trust conveying the Real Property to James L. Clayton as Trustee for the benefit of Luv Homes (the Luv Homes Deed of Trust). The Luv Homes Deed of Trust was recorded with the Knox County Register of Deeds on August 12, 1999. The Contract and the Luv Homes Deed of Trust were subsequently assigned to Vanderbilt Mortgage and Finance, Inc. (Vanderbilt Mortgage). On August 9, 1999, Mary L. Bond executed a Full Release of Deed of Trust Lien, releasing the Bond Deed of Trust, which was recorded with the Knox County Register of Deeds on August 12, 1999.

The Debtors filed the voluntary petition initiating their Chapter 7 bankruptcy case, along with their statements and schedules, on October 14, 2002. The Debtors listed the Real Property on their Schedule A, claiming a current market value of $66,300.00, subject to a secured claim of $77,000.00. The Debtors based this amount on the value assessed the Real Property by the Knox County Property Assessor according to a 2001 tax appraisal of $18,200.00 for the land and $48,100.00 for the mobile home. The Debtors also listed the Real Property on their Schedule C, claiming a $7,500.00 homestead exemption pursuant to Tennessee Code Annotated section 26–2–301 (2001) (Tennessee's Homestead Statute).

Vanderbilt Mortgage filed a secured proof of claim with attachments on October 31, 2002,[3] in the amount of $76,556.32.[4] Colonial filed its proof of claim on October

---

**2.** The recorded Default Judgment also satisfies the Bankruptcy Code's definition of "judicial lien," meaning a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C.A. § 101(36) (West 1993).

**3.** The Stipulations erroneously state that the proof of claim was filed on October 23, 2002.

**4.** The court takes judicial notice that the Debtors entered into a Reaffirmation Agreement with Vanderbilt Mortgage on November 19, 2002, which was filed with the court on December 20, 2002. *See* FED. R. EVID. 201.

29, 2002,[5] in the amount of $26,972.59.[6] Other encumbrances on the Real Property include real estate taxes in the aggregate amount of $1,752.37. The Debtors were granted a discharge on February 3, 2003.

On February 18, 2003, Colonial filed a Motion for Abandonment of Property requesting that the Real Property be abandoned. On February 27, 2003, the Debtors filed an Objection and Response to Colonial Loan Association, Inc.'s Motion for Abandonment of Property, asserting that Colonial's judgment lien had expired pursuant to Tennessee Code Annotated section 25–5–105 (2001). In the alternative, the Debtors asserted that the judgment lien was avoidable, and in accordance with that argument, the Debtors filed their present Motion to Avoid.[7]

In connection with the Motion to Avoid, an appraisal of the Real Property was performed on April 23, 2003, by Michael F. Jordan, Sr., a certified appraiser, who appraised the Real Property at $97,500.00, assigning values of $20,000.00 as to the land and $77,500.00 as to the mobile home. Colonial asserts that this amount better represents the current market value of the Real Property as opposed to the $66,300.00 amount listed in the Debtors' bankruptcy schedules, that was taken from a 2001 tax appraisal. The Debtors urge the court to utilize an amount representing the difference between the two appraisals based upon the Debtors' filing in October 2002. Accordingly, the Debtors ask the court to value the Real Property at $81,900.00, representing $19,100.00 for the land and $62,800.00 for the mobile home.

---

5. The Stipulations erroneously state that the proof of claim was filed on October 25, 2002.

6. Colonial's proof of claim did not specify whether it was filed as a secured or an unsecured claim.

## II

A bankruptcy estate is formed upon the filing of a petition under any chapter of the Bankruptcy Code, and property owned by a debtor becomes property of that bankruptcy estate. *See* 11 U.S.C.A. § 541 (West 1993). Debtors may exempt certain property as allowed by 11 U.S.C.A. § 522(b)(2), which provides, in pertinent part:

> (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.... Such property is—
>
> . . . .
>
> (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place; and
>
> (B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

11 U.S.C.A. § 522(b)(2).[8] "Exempt property is subtracted from the bankruptcy

---

7. The court entered an Agreed Order on April 17, 2003, granting the parties' Motion to Hold Matter in Abeyance as to Colonial's Motion for Abandonment of Property, pending the outcome of the Debtors' Motion to Avoid.

8. Section 522(b) allows states to "opt out" of using the federal exemptions enumerated at

estate and not distributed to creditors" to allow debtors to retain sufficient property after bankruptcy to obtain "a fresh start." *Lawrence v. Jahn (In re Lawrence)*, 219 B.R. 786, 792 (E.D.Tenn.1998). To further accomplish this goal, § 522(f) provides in pertinent part:

> (f)(1) ... [T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> (A) a judicial lien[.]
>
> . . . .
>
> (2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
>
> (i) the lien;
>
> (ii) all other liens on the property; and
>
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.
>
> (B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.

11 U.S.C.A. § 522(f) (West Supp.2003). The § 522(f)(2) formula is "a relatively simple calculation of value minus the sum of other liens, the exemption, and the judicial lien to be avoided. In the event this formula produces a negative number, the

judicial lien must be avoided in that amount since this is the extent to which the exemption is impaired." *Sheth v. Affiliated Realty & Mgmt. Co. (In re Sheth)*, 225 B.R. 913, 916 (Bankr.N.D.Ill.1998); *see also Tedeschi v. Falvo (In re Falvo)*, 227 B.R. 662, 666 (6th Cir. BAP 1998). However, a judicial lien remains in any amount greater than the impairment, as "partial lien avoidance is appropriate in these circumstances and ... full avoidance is inconsistent with the language and intent of the statute." *Falvo*, 227 B.R. at 666.

In this action, the Debtors urge the court to strictly follow the statutory language of § 522(f)(2), using the formula without any consideration as to priority under state law. Colonial, on the other hand, requests that the court respect the state law priority scheme in its application of § 522(f)(2) and, thus, determine that because its lien is superior to Vanderbilt Mortgage's lien under Tennessee's priority scheme, it does not impair the Debtors' homestead exemption and should not be avoided.

### III

The first issue before the court is the value of the Real Property for the purposes of the § 522(f)(2) formula. The Debtors bear the burden of proof as to all elements necessary to avoid Colonial's lien, including valuation. *See Falvo*, 227 B.R. at 664 (6th Cir. BAP 1998); *Lee v. Bank One, N.A. (In re Lee)*, 249 B.R. 864, 867 (Bankr.N.D.Ohio 2000). For the purposes of exemptions, § 522(a)(2) (West 1993) provides the definition for "value" as "fair

---

11 U.S.C.A. § 522(d) (West 1993 & Supp. 2003) and instead use their own exemptions. Tennessee has "opted out" of the federal exemptions. *See* TENN. CODE ANN. § 26–2–112 (2000); *Rhodes v. Stewart*, 705 F.2d 159, 161–62 (6th Cir.1983) (finding Tennessee's "opt-

out" statute is constitutional). The Debtors claimed a $7,500.00 homestead exemption in the Real Property pursuant to Tennessee's Homestead Statute. *See* TENN. CODE ANN. § 26–2–301.

market value as of the date of the filing of the petition[.]" 11 U.S.C.A. § 522(a)(2).

The filing date of the Debtors' bankruptcy petition was October 14, 2002. The two values provided are a 2001 tax appraisal in the amount of $66,300.00 and a 2003 appraisal in the amount of $97,500.00. However, the only appraisal report produced is the 2003 appraisal report, conducted by a certified appraiser six months after the filing date. *See* Exhibit 8. This appraisal report compares three similar properties and includes photographs of the Real Property and the comparable properties. On the other hand, the value assigned the Real Property by the Debtors is the value assessed for tax purposes. Because the court attaches little weight to values assigned real property for tax purposes [9] and because the assessment is not current, the court finds that the 2003 valuation more accurately establishes the fair market value of the Real Property as of the date that the Debtors filed their bankruptcy petition.

▮▮▮▮ Additionally, the court must determine whether the mobile home has become affixed to the Real Property such that its value should be included in the analysis. Pursuant to Tennessee Code Annotated section 25–5–101, judicial liens created by the recording of judgments with the register of deeds attach only to real property and not to personal property.[10] TENN. CODE ANN. § 25–5–101; *see also ATS, Inc. v. Kent,* 27 S.W.3d 923, 924 (Tenn.Ct.App.1998). Thus, if the Debtors' mobile home is affixed to the Real Property, the court may utilize the entire $97,500.00 value of the Real Property; however, if the mobile home is not affixed, the court may utilize only the $20,000.00 land value, as Colonial's judicial lien would not attach to the mobile home.

▮▮▮▮ Under Tennessee law, "whether a mobile home is considered a motor vehicle and therefore personal property or a fixture attached to real property depends upon how the mobile home is actually used." *In re Owens,* 36 B.R. 661, 663 (Bankr.M.D.Tenn.1984). Additionally, as to personal property,

[i]n Tennessee, only those chattels are fixtures which are so attached to the freehold that, from the intention of the parties and the uses to which they are put, they are presumed to be perma-

---

9. Tennessee courts do not consider tax appraisals credible evidence of the market value of real property. *See, e.g., Knoxville Housing Auth., Inc. v. Bower,* 202 Tenn. 621, 308 S.W.2d 398, 401 (1957) ("[E]vidence of the assessed value of . . . [real] property . . . is not competent evidence of the market value of the property at all . . . ."); *Wray v. Knoxville, La-Follette & Jellico R.R. Co.,* 113 Tenn. 544, 82 S.W. 471, 475 (1904) ("This court knows judicially and as a part of the financial history of the State that land is never assessed for purposes of taxation at its real cash market value[.]"); *City of Murfreesboro v. Worthington,* No. 01A01–9703–CV–00124, 1997 WL 772137, 1997 Tenn.App. LEXIS 906 (Tenn.Ct. App. Dec.17, 1997) ("In Tennessee, property tax valuations are not admissible to prove the value of a parcel or any portion thereof."). This court agrees.

10. A lien, in its broadest sense, is a legal claim or charge on real or personal property used as security for the payment of some debt or obligation. Persons who obtain a judgment become judgment creditors and may obtain two significantly different liens against the judgment debtor's property. The first is the judgment lien authorized by Tenn.Code Ann. § § 26–5–101(b) (Supp.1994) that attaches to a judgment debtor's real property. The second is the execution lien authorized by Tenn.Code Ann. § § 25–5–103 (1980) that attaches to the judgment debtor's personal property. This lien requires the registration of the judgment within sixty days after it is rendered and issuance and levy of a writ of execution.

*Keep Fresh Filters, Inc. v. Reguli,* 888 S.W.2d 437, 443 (Tenn.Ct.App.1994) (internal citations omitted).

nently annexed, or a removal thereof would cause serious injury to the freehold. The usual test is said to be the intention with which a chattel is connected with realty. If it is intended to be removable at the pleasure of the owner, it is not a fixture.

*Hickman v. Booth,* 131 Tenn. 32, 173 S.W. 438 (1915) (internal citations omitted). Of these factors, intent and purpose control. *See Hubbard v. Hardeman County Bank,* 868 S.W.2d 656, 660 (Tenn.Ct.App.1993); *Process Sys., Inc. v. Huddleston,* No. 02A01–9503–CH–00063, 1996 WL 614526, at *3, 1996 Tenn.App. LEXIS 695, at *7 (Tenn.Ct.App. Oct.25, 1996). Other relevant factors include the length of time that the mobile home has been located upon the real property, whether additional structures have been added, and whether the mobile home has been connected to electrical, water, and septic systems. *See Owens,* 36 B.R. at 663; *Assocs. Capital Corp. v. Cookeville Prod. Credit Ass'n,* 569 S.W.2d 474, 476 (Tenn.Ct.App.1978).

█ In this case, the parties stipulated that the mobile home was delivered to the Debtors' current address after it was purchased in July 1999, and that within several days thereafter, the mobile home was situated on concrete block piers with concrete footings, and the wheels were removed. The mobile home was not attached to the concrete block piers or the concrete footings; however, it was connected to electricity, to a water line, and to a septic tank by a single drain pipe. In early 2000, the Debtors placed a wood frame and plywood skirting around the crawl space that do not provide structural support to the mobile home. As ascertained from the photographs of the mobile home attached to Mr. Jordan's 2003 appraisal report, further additions to the mobile home included a front deck with steps leading up to the front door, a back deck

with steps added to one back door leading to the Debtors' above-ground swimming pool, and concrete steps attached to the other back door. The Debtors have landscaped a walkway in front of the mobile home, and a concrete driveway has been constructed to the side of the mobile home.

It appears to the court that the mobile home has become affixed to the Real Property under Tennessee law, and therefore, its value should be included in the § 522(f)(2) analysis. First, the mobile home was purchased almost four years ago and delivered to the Debtors' Real Property, where the Debtors have maintained the mobile home as their primary residence. The Debtors have connected the mobile home to the necessary utility services, and they have landscaped the property surrounding the mobile home. There is no doubt that it was the Debtors' intention to use the mobile home as their residence and to permanently affix it to the Real Property. Along those lines, in their Schedule A, the Debtors describe their Real Property as "Lot & Home," assigning a total value of $66,300.00.

Additionally, even though the Debtors could possibly move the mobile home to a new location, doing so would damage the Real Property, as well as the mobile home and additional added features. The mobile home itself may not be attached to the concrete footings; however, they are imbedded into the ground, much like the foundation on a house. The Debtors have constructed a concrete driveway, which would also be difficult and damaging to remove from the land. Finally, the additional structures, such as the steps and decks, would most likely not survive being moved, and clearly, the wood frame and plywood skirting would be destroyed.

Because the Debtors purchased the mobile home and placed it on their Real

Property with the intent and purpose of using the Real Property and the mobile home together as their permanent residence, and they have continued to use them in this manner for approximately four years, the court finds that the mobile home has become affixed to the Debtors' Real Property. Therefore, the court shall use the entire $97,500.00 value in its § 522(f)(2) analysis.

## IV

■ Having determined the proper value for the Real Property, the impairment analysis dictated by § 522(f)(2)(A) is as follows:

| | | |
|---|---|---|
| (i) the lien sought to be avoided: | | $ 26,972.59 |
| (ii) all other liens on the property: | | |
| (1) real estate taxes owing | $ 1,732.57 | |
| (2) Vanderbilt Mortgage | $ 76,556.32 | |
| Total other liens | | $ 78,288.89 |
| (iii) homestead exemption | | $ 7,500.00 |
| Total Liens and Exemption | | $112,761.48 |
| Value of Real Property | | $ 97,500.00 |
| Extent of Impairment | | $ 15,261.48 |

Under this formula, the Debtors may avoid any judicial lien to the extent that it impairs their homestead exemption or up to $15,261.48. Since Colonial's lien is a greater amount, $26,972.59, the Debtors may only avoid Colonial's lien by $15,261.48, leaving Colonial with a judicial lien encumbering the Real Property in the amount of $11,711.11.

■ Colonial urges the court to go beyond the statute and to respect Tennessee's priority laws by incorporating them into the § 522(f)(2) formula. First, Colonial claims that it has a more superior interest in the Real Property than Vanderbilt Mortgage because its lien was perfected under Tennessee law prior to that of Vanderbilt Mortgage. Second, Colonial argues that allowing the Debtors to avoid its lien in favor of a consensual later lien would have absurd results and provide the Debtors with a windfall. In support of these arguments, Colonial cites to several cases in which the courts did apply the respective states' priority rules.[11] However, in none of these cases did the court ignore the express language of § 522(f)(1) and allow a judicial lien that may have been perfected under state law prior to a mortgage lien to remain intact in the face of an avoidance action. The court agrees that "[t]hese cases do not go to the application of the [§ 522(f)(2)] formula, but only to how to calculate the debtor's interest in the property." *Kolich v. Antioch Laurel Vet. Hosp. (In re Kolich)*, 273 B.R. 199, 206 (8th Cir. BAP 2002). Moreover, the Sixth Circuit has expressly stated that

11. *See Lehman v. VisionSpan, Inc. (In re Lehman)*, 205 F.3d 1255 (11th Cir.2000) (court used debtor's equity instead of market value in § 522(f)(2) formula in scenario involving a non-filing spouse); *Nelson v. Scala*, 192 F.3d 32 (1st Cir.1999) (allowing for partial avoidance of a judicial lien); *In re Ware*, 274 B.R. 206 (Bankr.D.S.C.2001) (also applying the equity approach in *Lehman* ); *Dolan v. DAN Joint Venture (In re Dolan)*, 230 B.R. 642 (Bankr.D.Conn.1999) (when there are multiple judicial liens, priority under state law denotes which lien is most junior and first subject to avoidance).

§ 522(f)(2)(A) is a "federal definition of impairment ... and, in light of [its] explicit language, we no longer look to state law to define impairment." *Holland v. Star Bank, N.A. (In re Holland)*, 151 F.3d 547, 550 (6th Cir.1998); *see also Radcliffe v. LPP Mortgage, Ltd.*, No. 3:02CV-376-S, 2003 WL 1825451, at *2, 2003 U.S. Dist. LEXIS 5286, at *6 (W.D.Ky. Apr. 1, 2003) ("State lien priority law, while perhaps useful in state foreclosure proceedings, simply has no applicability [in application of the § 522(f)(2)(A) formula] when Congress has spoken on the subject, and clearly.").

The Sixth Circuit has not ruled on a case directly on point with this matter; however, the Eighth Circuit recently examined a case with similar facts to the case presently before the court, and held that even though a deed of trust may be inferior in a state's priority scheme, it must nevertheless be included in the impairment analysis of § 522(f)(2). *In re Kolich*, 328 F.3d 406 (8th Cir.2003). The Eighth Circuit stated that the issue before the court was "whether 'all other liens' in subsection 522(f)(2)(A)(ii) includes consensual liens junior to the judicial lien at issue[, or in other words,] whether Congress intended that this statutory formula disrupt lien priorities created by state law[.]" *Kolich*, 328 F.3d at 410. The Eighth Circuit examined the plain language of the statute together with the legislative history and determined that

> [t]o be sure, the Bankruptcy Code usually looks to state law to define the property rights and priorities of creditors, including secured creditors. But § 522(f) is an exception to that policy. It was enacted to permit the avoidance of judicial liens that can interfere with the debtor's post-petition fresh start. This selective avoidance gives an advantage under federal law to secured creditors holding consensual liens, typically,

residential mortgage lenders. But Congress intended to treat consensual lienholders more favorably, because their contractual relationships with the bankruptcy debtor typically allow the debtor to acquire equity in the exempt property by making post-petition mortgage payments. The 1994 amendment creating the statutory formula here at issue was expressly aimed at overruling prior judicial decisions compromising that intent.

*Kolich*, 328 F.3d at 410 (citing H.R. REP. No. 103–835, at 52–54 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3361–63; *Holland*, 151 F.3d at 549–51).

The court agrees that the plain language of the statute provides for inclusion of all liens, defined by the Bankruptcy Code as "charge[s] against or interest[s] in property to secure payment of a debt or performance of an obligation[.]" 11 U.S.C.A. § 101(37) (West 1993). There is nothing in § 522(f)(2) that authorizes the court to pick and choose which liens to include in the impairment analysis, depending upon any state law priority scheme. To the contrary, § 522(f)(2) expressly instructs the court to include any and all liens in making any impairment analysis. Accordingly, the court is unable to deviate from this express instruction by Congress.

Finally, as to Colonial's argument that avoidance of its lien will result in a windfall for the Debtors, resulting in an absurdity, the court again relies upon and adopts the following reasoning of the Eighth Circuit Bankruptcy Appellate Panel in *Kolich:*

> Permitting Debtors to avoid [Colonial's] lien in its entirety will not result in the kind of windfall the *Nelson [v. Scala*, 192 F.3d 32 (1st Cir.1999)] and *Lehman* decisions sought to avoid. Rather, it furthers the expressed legislative purpose of bringing clarity to the process of calculating the debtor's preserved ex-

emption and protecting a debtor's exemption rights against judicial liens.... Section 522(f)(2)(A) is a congressionally mandated bright line formula for determining how to calculate the extent to which a judicial lien impairs an exemption. As with all bright line tests, at times it may seem a formulaic application brings unfair results. Yet, under the facts of this case, the perceived unfairness of allowing a Debtor to avoid a judicial lien which is prior to a junior consensual lien was anticipated by Congress. Congress chose clarity over possible unfair results.

*Kolich*, 273 B.R. at 206 (internal citations omitted).

## V

In summary, under the express language of § 522(f)(2), Colonial's judicial lien impairs the Debtors' homestead exemption to the extent of $15,261.48, and thus, Colonial's lien is avoided to that amount under § 522(f)(1)(A). The remaining $11,711.11 of Colonial's lien remains intact. The Debtors' Motion to Avoid Alleged Lien will be granted in part and denied in part.